Are you dividing the time? Yes, Your Honor, we are. How are you dividing it? I will be addressing, on behalf of both Mr. Leon-Esparza and Mr. Stevens, only the challenge to the substance abuse testing provision, and Ms. Fontier will be addressing only the challenge to the substance abuse treatment provision. Only the... You kept co-counselors addressing what I could not hear. The substance abuse treatment condition. Specifically, the argument that the district court, in both of our cases, improperly delegated the authority to determine whether our clients must undergo substance abuse treatment as part of supervised release. I will be addressing the testing condition. Okay. Go ahead and proceed. Good morning. May it please the Court. Laurie Schoenberg of the Federal Defenders of San Diego. On behalf of the defendant appellant in this case, Ramiro Leon-Esparza, with me is Alice Fontier from my office, counsel for defendant appellant Antonio Damon-Stevens. Turning to the substance abuse testing condition, in this case, the text of the supervised release statute, 18 U.S.C. section 3583D, expressly vests the authority to set the maximum number of drug tests required as part of supervised release with the district court and not with the probation officer. The statute says, "...the court shall also order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release on supervised release, and at least two periodic tests thereafter, as determined by the court, for use of a controlled substance, unless the condition is, quote, ameliorated or suspended by the court. In no way did Congress intend, and does the language of the statute allow, that the court can delegate that authority to a nonjudicial officer like probation. By requiring that Mr. Leon-Esparza and Mr. Stevens, quote, submit to one drug test within 15 days of release from imprisonment, and at least two periodic drug tests thereafter, as directed by the probation officer, and as special conditions of supervised release, quote, participate in a program of drug or alcohol abuse treatment, including urinalysis testing and counseling, as directed by the probation officer, the district court violated both the supervised release statute in Article III by allowing the probation officer, and not itself, to determine whether Mr. Leon-Esparza and Mr. Stevens must undergo substance abuse testing as part of supervised release and the maximum number of drug tests to be performed beyond the minimum of three mandated by Congress. There are two different problems, and I thought you were dividing them. One is whether the court delegated to the probation officer the decision as to whether your clients had to undergo drug treatment program. I'm only addressing the testing provision in this case. And as to the testing provisions, what's wrong with the solution the First Circuit found in, what is it, Leon-Dowski, which is to construe that provision as saying the court only ordered three, and that's all that can be given outside of a treatment program. That's fine, Your Honor. We would not have a problem with that solution if this court chose to avoid the improper delegation problem as the First Circuit did in that case. We would say, though, that the standard and special conditions in this case were not ambiguous in terms of delegating the authority of whether to submit someone to testing to the probation officer and also the maximum number of tests required. The First Circuit in Padilla did distinguish Leon-Dowski on that basis and just invalidated the conditions in that case. But we're fine with the solution. But the panel in Padilla added some separate opinions to it. And two out of the three judges in Padilla seemed to say, we're not very happy about where we are, but we are bound by existing First Circuit precedent. Yes. The First Circuit in Padilla did say that they were bound by the ruling in Melendez-Santana, which said that the plain language of 3583d gave the courts the responsibility to determine the maximum number of drug tests beyond three that would be required and also went on to say that courts cannot fulfill this congressionally assigned responsibility by assigning it to probation officers. The source of the dispute in Padilla was whether the plain error doctrine should apply. Which is a problem, I think, for you in this case, isn't it? It's a problem for me, not a problem for Mr. Stevens, because they did raise it below. I respectfully disagree with Judge Delia's opinion in that case. And I don't know. Well, wouldn't everybody like to get it clear? I mean, we're talking about a form that is used. And it's a problem that's not very difficult to solve, either for the past or the future. No, not at all. I would think both sides would want to have a nice, clear answer about how the form should read. I would agree with that, Your Honor. And all the court has to do, all the district courts have to do in these cases to solve the improper delegation problem is just to make clear that they are ordering a defendant to submit to substance abuse testing as part of supervised release and just set a maximum number of drug tests that would be required during that term. Can you say 100? You could say 100. I'm trying to think of the practical impact here. Is it going to be that because what happens, as I understand it, is you have an ongoing testing and treatment together. And when you get indications or where the so-called delegated here, where the probation officer has reason to suspect that maybe the test is going to turn out positive because he's been associated with the wrong people or he's gotten these other reports, orders a test. Now, under your scheme, do we have either, A, the district court setting a high maximum, so basically have exactly what you have now except you've got a high ceiling there someplace, or, B, everybody rushing back to the court to get permission to have an additional test based on factual circumstances that arise in the course of probation? I don't see how either of those really advance the game at all, but are those the alternatives we're facing? Those could be the alternatives you're facing. What could happen is that the district court could set a certain number of drug tests that would occur. And if it appears that the defendant in question is in violation, the probation officer can go back to the court and say, look, this guy's in violation. All you really need is the district court has to say to the probation office, what's the maximum number of tests you would reasonably ever impose, one a week? Let's say the probation officer says, yes, one a week. Then the district court, then the form from then on reads that the drug tests shall be conducted at the discretion of the probation office, but not more than one a week. And that would be the form. It solves whatever legal problem would exist if Congress required that the court determine the number. I think Judge Clifton says it doesn't really solve any practical problem. It solves the legal problem because there's no delegation then. There would be no delegation in that case. The use of the term at the discretion of the probation officer I would think would be problematic because the term discretion could imply that the probation officer can decide whether to submit someone to substance abuse testing. But in all other respects. It doesn't have to. I mean, if the court says you may test but not more than once a week, the probation office can determine whether to give a test each week. They don't have to if he's doing well. Plus the fact, counsel, that the person who's on this program reports to the probation office on a regular basis, either once a month or twice a month, and they get a chance to see these people and they determine whether these people are doing what they're supposed to do. And I don't think that you contemplate that these people on this program would report to a judge once a month or twice a month on that basis. They see these people regularly and they are trained to know what to look for when they see them. And many times they find that even these people say that they're doing these things. Turns out they're not. And they have learned ways to get around it. You know, we're not dealing with people who are unsophisticated in handling this matter, and you have to have people who are somewhat sophisticated to see it and report back to the judge, because certainly the defendant isn't going to do that. He's going to try to get around this system if he possibly can. Certainly the probation officer can make recommendations to the district court, and the district court can solicit recommendations. I'm not saying that there should be no interaction between the probation officer and the district court. In this case, 3583D expressly vests the authority to impose substance abuse testing conditions with the court, and not the probation officer, and to do otherwise would be an improper delegation of power. Now, unless this court has any other questions, I'd like to turn this matter over to the TA. Thank you. Thank you. And, Your Honors, just as a preliminary note, I will note the difference between Mr. Stevens and Mr. Leon Esparza is that at the sentencing in this matter, Mr. Stevens did object to the drug testing conditions. Secondly, Mr. Stevens, this issue is right before the court, because Mr. Stevens has been released from custody and is currently on supervisor lease. He has been since June of last year, and he did undergo treatment, and is currently subjected to continuous testing. That's the only difference between Mr. Stevens and Mr. Leon Esparza, however. Now, as to the drug treatment condition, again, Your Honors, the language of the condition is what we take issue with. The language of that condition is … Let me ask you a question. Let's assume that the language made it clear that the judge determined whether your client would be subjected to a drug treatment program, not the probation officer. If that were true, do you have any problem with the fact that once he goes into a treatment program, that then the number of drug tests can be determined by the people administering the program? I do not, Your Honor. Okay. The only issue you have is whether, under this language, it's the court or the probation officer that made the decision as to whether he went into the program. That's absolutely correct. Okay. And, again, just to clarify the testing under the guise of treatment, however, I believe that the language of the condition would have to basically say, the defendant shall undergo drug treatment. During the course of treatment, the defendant may be subjected to urinalysis testing or drug testing of whatever nature. But doesn't it basically say that he will undergo treatment, including urinalysis? That's what I seem to remember. It says, that's what it says. It says, undergo drug treatment, including urinalysis testing, at the discretion of the probation office. What I have issue with is that the language, the at the discretion of the probation office, modifies the treatment condition. And it's not clear from this, from the language of the condition, whether or not the defendants in these cases would have to undergo drug treatment. The ultimate decision as to whether or not the person enters treatment is left to the probation office. I believe that condition, the problem is compounded by the fact of the condition, the drug testing condition, which Ms. Schoenberg addressed, in that drug testing occurs from the day a person is put on supervised release, whether or not they're subjected to treatment. During the course of treatment, I do not object to the person undergoing drug testing and the number to be determined by. The condition reads that he shall participate in a drug program of drug or alcohol abuse treatment, including urinalysis testing and counseling, as directed by the probation officer. That's the condition we're talking about? That's correct, Your Honor. Okay. Well, why shouldn't that be read as requiring that he participate in a program of alcohol or drug abuse treatment? Yeah. And that the probation officer administers that, but that the decision has been made that he must participate in a program. Your Honor, I don't believe that the language is clear, and because of that, to support my argument for that, I would turn the Court's attention to it. If it's not clear, why can't we construe it that way if it's ambiguous? I believe that the problem is that it can be construed either way. Is that bad for your client? One thing that puzzles me here is that I read it like Judge Reinhart did, that the treatment program is directed by the judge. The judge says you're in a program, and the details of the program, that goes to the probation officer. Now, you're suggesting the possibility is there the probation officer says no program is required at all. Well, I flip it around, is that bad for your client? For the probation officer to say, well, you don't have to bother with the program, you're clean, I'm satisfied, get out of here. That, in effect, that would, of course, not be bad for my client. However, the problem is that the language on its face is ambiguous. It can be read in either direction, and the probation, for exactly the reason you stated, under the language of this condition, the probation officer can say, no, you don't have to go to treatment, or yes, you do have to go to treatment. It's simply a legal issue that the court cannot delegate that decision to the probation office. You want us to read it the other way, then? Then it would be legal. No, Your Honor. What I would like you to do is follow the rule that the Second Circuit set in United States v. Peterson, which says, because of the ambiguity in the language, that there are two possible readings, that it must be reversed. Counsel, what does your client suffer by being monitored by somebody on a regular basis to see that he's doing what he's supposed to do? That's how he got to the court in the first place. How does he suffer by that? The problem, Your Honor, is that he has to undergo treatment or testing on a weekly basis. He's been on supervised release for over six months. Well, this isn't somebody that just picked off the street and picked up for this program. This is somebody who's violated the law, and instead of going to jail, they're giving him this treatment on an outpatient basis. That's correct, Your Honor. The judge could have sent him to jail, and they would monitor him in jail. Your Honor, the problem is that it's – I'm not arguing as to the applicability of this condition. There's no – You educate me. What is it you're suffering that you want us to correct? It's an improper delegation. It's simply a legal issue. I'm not arguing as to the applicability of this condition. You've got a client here. I mean, I think we're all puzzled by the same thing. You've got a client here, and I can't figure out how your client's interests are being furthered by a position that seems to say, you've got to make my client do something, rather than give the probation officer the possibility of saying you don't have to do it. Well, Your Honor, the problem is that there's simply no meaningful judicial review of the terms of the supervised release, and we don't know what happens to each and every defendant until after a revocation has happened, and then the person has to challenge the revocation. But these people are addicted. They're addicted, and they're trying to get them off of that addiction. Your Honor, that's – That's what this is. Otherwise, why do it? Especially in Mr. Leon's case. There's simply no indication of that on the record. Why would they send him to the program then? Do you think they just picked him out and sent him to the program? The problem is, Your Honor, that they have complete unfettered discretion to make these decisions. No, no. Wasn't he found using some of the substance? In Mr. Stevens' case, yes, he was. So they take somebody who's using the substance. They're trying to get him off of it, and instead of putting him in jail, they let him go back to work so he can have some kind of a meaningful life, and they're going to treat him. And the government is paying for him to be treated. And what is he suffering by that? Again, Your Honor, I am not challenging the applicability of this condition to Mr. Stevens. If the condition had been properly worded, it is – I would not be before Your Honor's arguing that the court could not determine the test. What is that doing for this human being? Because what happens to these people if they don't get – I'm not arguing that these – that Mr. Stevens or any other defendant is not allowed to be drug tested. The number – whether or not he undergoes treatment and the number of tests simply has to be decided by the court. Somebody has to monitor him on a regular basis. You don't expect a judge to monitor him on a weekly basis, do you? I don't, Your Honor. I simply ask them to set a range or a maximum number of tests and make the ultimate decision as to whether or not the person goes into treatment. In other words, the people that are testing will tell you that he's making progress. Most of these people don't do well on that program. Very few of them actually succeed. Your Honor, the probation officer has absolute authority to monitor the test. That is the probation officer's job, and then to report to the court. We're simply asking the court to make the ultimate decisions as to the conditions of the sentence and the supervisory lease. What if the court doesn't make the decision and this person is still addicted? How does he suffer by that? At that point, Your Honor, if the probation officer felt that it was necessary, they may come into court and ask for a modification of the supervisory lease condition. Why have another hearing when it's not necessary? The problem is, Your Honor, that this – it absolutely gives the probation officer unfettered discretion to do as they wish, and that was – on the plain language of the statute, that was clearly not Congress's intent. The statute says that it has to be determined by the court. Well, probation officers are people who are trained in this area, aren't they? I'm sorry, Your Honor. People trained in this area have been doing – do it all the time. They look at people who are addicted. They see them all the time. They're there in court when these people plead guilty. They're there in court when they're sentenced, and they take on the burden of monitoring these people on a regular basis. Your Honor, the probation office has the power to make recommendations to the court, and the court may then institute the appropriate sentence. If that sentence turns out to not be appropriate, the probation office can come back and ask for modification. It's just the – the language of the statute states clearly that it's a decision to be made by the court. It was Congress's intent, and we simply are asking the court to follow the language of the statute. But we're talking about somebody who's been convicted of a crime who's using drugs. Isn't that correct? Not in every case, Your Honor. That's how they got there, right? That's how they got before the court. Isn't that correct? Your Honor, the fact is – simply the fact is that they're convicted, yes. Isn't that how they got before the court? They are convicted. And the court is extending treatment to these people, which they don't pay for. The government pays for it. The citizens pay for that. Now, what harm do they suffer if somebody monitors us on a regular basis? No, Your Honor. I think exactly what you just said is my point, that if the court gives them treatment, I would not be standing here today. The problem is that the court gives the probation officer the discretion. Who do you think the probation officers are? Who do they work for? They are – they're nonjudicial officers, however, and giving them the authority to make the – Are they part of the court? Are they part of the court? That's correct, Your Honor. You don't expect a judge to take this man over every week and make sure he gets a treatment, do you? I don't. That's not what I'm asking for, Your Honor. Well, the person who monitors is a probation officer. He sees these people on a regular basis. And many of them don't even show up for those appointments. Monitoring is well within the power of the probation office as an appointee of the court. That is absolutely true. However, making the decision as to the conditions of supervised release, making the decisions as to what the person says will be – Do you think they've heard people continue going there that have been cured? Do you think probation officers keep sending people back to take the treatments when they don't need them? Your Honor, I can't say what probation officers do. I can't say what they do in every single case. I can't say because we do it on a regular basis. And we monitor these people on a regular basis. I can – I know that Mr. Stevens has been tested every week for six months and is yet to test positive and still continues to be tested. And is he cured? Is he cured? Perhaps he – maybe he is. I don't know. Perhaps. You don't know. I can't speak to Mr. Stevens' drug condition. But the probation officer could answer that question in two seconds because he would know what the reports show. And he would also notice that maybe he didn't show up each week. Or maybe they haven't – hasn't returned. Or maybe he's involved in another crime or has been rearrested. If that were true, there would be a revocation hearing, and that's not the case. Right. Mr. Stevens has been complying with the conditions of supervised release. The only problem before the Court is that we don't know what those conditions are, and there's absolutely no judicial review as to those conditions. And you think the probation officer doesn't know that either? Do you think the probation officer is ignorant of all that? No. I'm sure the probation officer knows that the problem is that the Court doesn't know, and Congress gave that power to the Court. All right. Thank you, counsel. Good morning, Your Honors. May it please the Court. Carol Lee on behalf of the United States Respondent Pelley on the Stevens matter. And with me at counsel's table is Jason Oda, who is here for Respondent Pelley on the Esparza – Leon Esparza matter. In listening to argument just now, the problem here is that appellant is raising the issue as to whether probation has the authority to conduct further testing. That's really the issue. But the issue is framed by appellant in the briefs, and as it has evolved, that's what it's become. But the issue – There are two separate issues before us. One is whether the treatment program has been ordered by the Court, or whether the Court left it up to the probation officer to decide whether there should be a treatment program. If we were to construe the provision as saying the Court has determined that there shall be a treatment program and that the probation officer administers that program, then there's no dispute. Now, do you agree that that's the proper interpretation? Well, I think the appellant's argument does focus – is challenging Judge Lorenz's order. And so we need to review Judge's order. The analysis starts with Judge Lorenz. All you need to do is answer my question. We don't need to review the order. The question was, the condition in the order that says that the defendant shall participate in a drug and alcohol treatment program, does that constitute a determination by the judge that the defendant shall participate in a program? Or does it mean that the judge has said to the probation officer, you make the determination whether the defendant shall enter a program? No, it does say that treatment is mandatory per the Court. Okay. Well, then your opponents say that if that's what it means, there's no issue. Now, they said that it's ambiguous and that the Second Circuit said that if it's ambiguous, that means it's unlawful. Our question is, can we say that the condition means that? If we do, there's no more issue to that part of the case. The other part of the case is, is the Court required to set a maximum number of times outside of treatment that the probation officer can require drug testing? They're not contesting that when he's in treatment, it can be any number of times. They're saying that when there's no treatment program, the Court must specify the maximum number of treatments. Now, the First Circuit said that when you have the standard condition of the 1 in 15 days and then at least 2 more, that if that's all the Court says, they will construe that as a maximum of 3, and that if you want more, you go back to the Court and get the order changed. What's your position on that? Well, let me address first the treatment issue. Here, the order is explicit. Treatment is mandatory. There's no improper delegation. And Judge Lorenz directed that the ministerial, the administrative functions of monitoring those tests would be conducted by probation. That's what's delegated here, and that's proper, and that's within the line of Article 3 of the Guidelines and the statute. If in the worst-case scenario, as Your Honor referred to in the Second Circuit, the Peterson case, that it would be remanded to Judge Lorenz to somehow remand this treatment provision to clarify what he meant, we'd be saying we're going to do it. Look, this is a standard form. I think probably not only here, but probably elsewhere. So we don't want to remand it and have him make a special finding in that particular case. You want to end up with a form that you can use where you don't have to litigate every single case. And if we were to construe the form, as you suggest, as being a direction by the court that the defendants participate in these programs, then there's no further legal problem. Now, if we didn't construe it that way and said it was an invalid provision, then you'd just have to rewrite the provision. But let's assume for the moment that that problem is solved, that we would construe it the way you do. What about the other provision where the number of out-of-treatment tests Congress said is directed by the court? Do you agree that the court has to set the number? No. Not the maximum number. I do agree that the minimum number must be set, that that's required by statute. And the minimum number is 3. And here the court did do that. It explicitly in the testing provision referred to 3. You believe the court can say, and you must give 3, and as many others as the probation office determines? The court can do that. But what it did here was just order the 3, the minimum of 3. Probation can test more, but that's pursuant to its historical authority to statutory precedent here in the Ninth Circuit under United States v. Duff. The probation office can test further beyond the minimum 3 that the court orders. What the statute allows — Was it after the statute? It was, but that doesn't invalidate Duff. Presumably, Congress is aware of the Duff decision at the time that it amended the Violent Crimes and Law Enforcement — Violent Crimes Control Act in 1994. Nevertheless, the — what the statute allows the court to do is to increase that minimum number. So the probation office can be ordered to test higher than just 3. The minimum number can be increased to 8, maybe 10 tests. Do you think the First Circuit just did wrong? Well, I do part ways with the First Circuit in its analysis of the — Part ways, but you don't think they're wrong? They are wrong. They are wrong. They are wrong because — and the rub in the First Circuit was really with the oral order. There seems to be a discrepancy between the oral and the written order in the Melendez case as to when tests are conducted. But you still have to focus on the broader authority here of probation, and probation does have the authority to conduct further testing. That's just part of its administrative duties that's properly delegated to it by the court. The as-determined-by-the-court language, I know that the appellant focuses in their arguments and in their briefs on this small subpart of the statute that the as-determined-by-the-court somehow, you know, delegates that the court must set a maximum number of tests for it to be conducted. But it's — I'd argue that it refers to at least a certain number of tests. It doesn't suggest that Congress meant there should be a maximum number of tests. It suggests three tests. It doesn't require any more than what the statute says. And you point to a different statute inciting Duff, and I presume Reardon, to say that the probation office itself has authority beyond what the statute we're talking about here, which speaks of the court. I got that kind of banged backwards. But you're pointing to a separate statute to give the probation office the authority to go higher than whatever minimum is ordered by the court under the statute that makes reference to the court. Correct. Under Title 18 of the United States Code, I believe Section 3603, which delegates duties to the probation office. I mean, Duff is still good law. It is from 1987. And the statute, the amendment to the statute, didn't change that. But the amendment did come up after Duff, and there was no question that it was intended to change the statute. But historically, you still have to look at the statute at the legislative intent of Congress, which at the time that the amendment was created was an attempt to address concern that there wasn't enough testing being done, that actually there was under-testing becoming a recurrent problem. And because of this, Congress set that there should be a minimum number of tests that the court should order probation to conduct. Just because it came later than Duff doesn't mean that it overturned Duff. I point out to the Court that we still have to focus. It should be on the language of the district court's order here. And the district court's order tracks the statute almost verbatim. It's not impervisibly delegating any authority to the probation office. Our testing provision just simply tells probation to carry out the administrative duties that are necessary to monitor defendants, which is quite different from the Melendez case, where the Melendez case, there was an express delegation of authority to the probation office, and that's improper. And, again, as to the treatment conditions, the language of our order is much different than the Melendez case, because, again, the Melendez order clearly delegated the decision whether the defendant gets treatment to the probation office. And, again, that is improper. With that, Your Honors, I'd like to defer to my counsel on the Leon Sparzer matter, unless the Court has any further questions. Thank you. Thank you. May it please the Court, Jason Notes on behalf of the United States. Your Honors, there were two issues in this case, and I'd like to incorporate Ms. Lee's arguments on behalf of the United States in reference to Leon Sparza, because I have a short time frame. I'd just like to ---- Is the order different? No. So it's all the same thing. You don't have to speak separately for the second case. The order is the same. The orders are the same, Your Honor. That's why we put the two cases together. That's what I thought. And just in case this Court, at least on issue number two that Judge Reinhart was talking about, about setting the maximum amount of drug tests, just in case Your Honors find that the Court must do that, and there was an improper delegation here under the plain error of review, which is the only differences in our case is that the Leon Sparza matter is a plain error standard. And I think by the questions ---- Well, what good does it do your office to get a decision in one case that it's okay because it's plain error and in the other that it's not all right because it was raised? Your Honor, I agree that the legal issue could be raised in the Stevens case, at least for the government's point of view. A good plain error analysis of just was there an error? Maybe. Was it plain? No, because there's not a clear deviation of the law. So you would say that even if we decide Stevens against you, we should decide Sparza in your favor. Is that your point? Absolutely, Your Honor. And what good does that do anybody? Just under the plain error analysis, that ---- Maybe it wouldn't urge us to revisit a lot of cases where there's not a practical difference, but we can make a statement of law in a case where plain error isn't at issue. That's correct, Your Honor. I mean, the practical reasons you're right for our office, it wouldn't make a difference because we'd still be as far along. Practical for your office, what you think we ought to do about it, your first position is say that the probation office can determine any number. The court just decides the minimum. And from then on, the probation officer has full range to decide whatever number he wants. That's correct, Your Honor. If you were to lose on that point, what's your next choice? How do you feel about the First Circuit's solution of saying that the order's valid, but you construe it as limited to three unless it's amended by the court? Assuming that we lose on that point, and it's difficult to, like, what I find practical and what the United States find practical may be two different things. I believe that that would be correct, assuming that you find an error, that the minimum of three as a mandatory condition would be the number of drug tests out of treatment. Out of treatment. And then, as you framed it, the special condition that while they're in treatment, at the discretion of probation, that as long as the court, because I think that's the issue. As long as the court makes the order. Exactly. You construe the condition as the court having made that order. Absolutely. All right. I think we understand that. Okay. So your purpose of your argument is to say whatever you do about Stevens, don't do it in this case also, because it's plain error. Yes, and I agree with counsel. And otherwise you adopt your co-counsel's arguments. Yes, Your Honor. Thank you. Thank you, Your Honor. All right. Unless somebody's had one minute worth of rebuttal, we're through. Is it? No? No. First of all, Ms. Lee, in the Stevens case, did refer to the language of 3583 and said that that only requires a minimum number of tests that the court must impose, as opposed to a maximum. And what I would say is that that condition could not be, that statute could not be more plain. What it does say in 3583-D is that after the first drug test, within 15 days of release, the court must impose at least two periodic tests thereafter, per-en, as determined by the court. I think we have to go with what the statute says. The statute means what it says, and that is what Congress intended. But could the probation office have authority to order additional testing under a different statute, as we held in Duff? No, Your Honor. Because in that, no, because the 1984 and 1994 acts actually narrowed probation officers' authority to do so. The statute at issue in Duff, 18 U.S.C. section 3655, was actually replaced by the Sentencing Reform Act of 1984. Footnote 1 in Duff actually acknowledges that. The Sentencing Reform Act required that, quote, the court may order as a further condition of supervised release any conditions set forth as a discretionary condition of probation in section 3563, including requirements that a defendant undergo available medical, psychiatric, or psychological treatment, including treatment for drug or alcohol dependency, as specified by the court. In the 1984 statute, Congress required that a probation officer use all suitable methods to aid a probationer or a person on supervised release. Now, in 1994, Congress amended 3583D to vest the authority to determine the maximum number of drug tests with the court. And in that same statute, Congress amended the provisions, the general provisions regarding the duties of probation officers, by specifying that, quote, the chief probation officer shall arrange for the drug testing of defendants on post-conviction release pursuant to a conviction for a felony or other offense. The First Circuit in Melendez-Santana construed that as giving the probation officer the authority to set up a testing program. And the difference between the 1984 and the 1994 Act, I would submit, narrows the probation officer's authority and clarifies that Congress intended that the probation officer support the court by providing ministerial support services, such as establishing a program not to decide whether either client must undergo substance abuse testing or treatment as part of supervised release. Finally, just with regard to jurisdictional error, I did want to make clear that courts, when examining an improper delegation of judicial authority, typically do not decide whether the error is prejudicial and automatically reverse. Melendez-Santana and Padilla did that in the First Circuit by saying that the error at issue, the improper delegation of judicial authority for the testing, was not subject to, quote, unquote, the usual plain error review. And the Supreme Court, in Wynn v. United States of 2003 Supreme Court case, essentially followed that analysis as well. In that case, that dealt with an improperly constituted Ninth Circuit panel consisting of an Article IV judge and two Article III judges. The Supreme Court, in that case, said that that was an improperly constituted appellate panel and declined the government's invitation to actually review that issue for plain error,  which, to ignore the violation of the designation statute in these cases, would incorrectly suggest that some action or inaction on the petitioner's part would create authority that Congress has quite carefully withheld. Even if the parties had expressly stipulated to the participation of a non-Article III judge in the consideration of their appeals, such a stipulation would not have occurred a plain defect in the composition of the panel. Here, since this case involves an improper delegation of judicial authority, I believe this Court should treat it the same way as an error that is reversible, regardless of whether it is prejudicial or not. And with that, we will submit. Thank you, counsel. Cases just argued will be submitted.  Thank you.
judges: Reinhardt, Clifton, Weiner